UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

KENNETH EUGENE CARTER,                    )
                                          )
            Plaintiff,                    )
                                          )        Civil Action Nos. 3:17-01337
v.                                        )
                                          )
PRIMECARE MEDICAL, *et al.*,              )
                                          )
            Defendants.                   )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is PrimeCare Medical's Motion for Summary Judgment (Document No. 58), filed on September 11, 2018. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendant's Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendant in moving to dismiss. (Document No. 60.) Plaintiff filed his Response in Opposition on November 16, 2018. (Document No. 75.) Having examined the record and considered the applicable law, the undersigned has concluded that PrimeCare's Motion for Summary Judgment should be granted.

## FACTUAL BACKGROUND

On February 21, 2017, Plaintiff, acting *pro se*, filed his Complaint claiming entitlement to relief under 42 U.S.C. §1983.[1] (Document No. 2.) Plaintiff named the "PrimeCare Medical and its staff capacity" as the Defendant. (Id., p. 1.) Plaintiff explains that he suffered injuries as a

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

result of the use of excessive force by correctional officers on October 17, 2012.[2] (Id.) Plaintiff complains that PrimeCare failed to provide adequate and appropriate medical care for his injuries. (Id.) Plaintiff alleges that medical staff, Jarrod Stewart, misdiagnosed the extent of his injuries. (Id.) As a result of the misdiagnosis and the lack of treatment, Plaintiff alleges that he has suffered a "span of physical damage to one's functions and prolonged duration of agonizing pain with no relieve or no intention of ever correcting injured areas." (Id.) Plaintiff states that Dr. Robert Walker of Mountain State Occupational Medicine reviewed Plaintiff's medical records "as a Certified Independent Examiner" and opined that Plaintiff "sustained injuries on 10-17-2012 sufficient to result in an acutely fractured 8th rib, multiple and bilateral rib injuries often result in restrictive lung disease, or the inability to fully expand the chest wall because of scarring at multiple levels and further maintains that the pre-existing tracheal stenosis would certainly be more susceptible to additional damage from the endured trauma sustained." (Id.) Plaintiff further notes that Dr. Walker determined that Plaintiff suffered injuries to his left eye, several ribs, shoulder, leg, and "neck to lower back." (Id.) Plaintiff claims that even after Dr. Walker rendered the above opinion, PrimeCare failed to take any action "to correct," "seek a cure," or "alleviate the pain" for Plaintiff's conditions. (Id.) As relief, Plaintiff requests that PrimeCare be held "accountable for the mishandling that lead to physical harm, damage, loss of strength, effectiveness, left eye, and prolonged suffering, forcibly fractured bones, broken ribs with no medical treatment and failure to properly treat, negligence resulting in prolong agony of hurt and discomfort such as uncalled for pain." (Id.) As Exhibits, Plaintiff attaches a copy of

---

[2] Plaintiff acknowledges that he filed suit in 2014 against correctional officers seeking relief for injuries he suffered as a result of the use of excessive force (Civil Action No. 3:14-cv-25636).

pertinent medical records. (Document Nos. 2-1 and 2-2.)

On April 11, 2017, Plaintiff paid the filing fee. (Document No. 9.) By Order entered on April 12, 2017, United States Magistrate Judge Cheryl A. Eifert directed the Clerk to issue a summons for the defendant and the United States Marshals Service to serve the defendant with the summons and complaint pursuant to Rule 4 of the Federal Rules of Civil Procedure.[3] (Document No. 12.)

On July 31, 2017, PrimeCare filed its Motion to Dismiss and Memorandum in Support. (Document Nos. 19 and 20.) PrimeCare argued that Plaintiff's Complaint should be dismissed based on the following: (1) "Plaintiff's claim should be dismissed pursuant to Rule 12(b)(6)" (Document No. 20, pp. 2 – 3.); (2) "Plaintiff's claims must be dismissed because the applicable statute of limitations has expired" (Id., pp. 3 – 4.); and (3) "To the extent the Plaintiff's Amended Complaint is based upon a violation of his constitutional rights, PrimeCare Medical, Inc. is not a 'person' subject to suit under 42 U.S.C. § 1983" (Id., pp. 4 – 5.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on August 1, 2017, advising him of the right to file a response to the PrimeCare's Motion to Dismiss. (Document No. 21.) On September 5, 2017, Plaintiff filed his Response in Opposition. (Document No. 23.) As Exhibits, Plaintiff attached the following: (1) A copy of his Affidavit (Id., p. 6.); and (2) A copy of a report from Dr. Robert B. Walker, a Certified Independent Examiner (Id., pp. 8 – 11.). On September 8, 2017, PrimeCare filed its Reply. (Document No. 25.) By Proposed Findings and Recommendation entered on November 28,

---

[3] Due to a conflict, the above case was referred to the undersigned on July 20, 2017, for total pretrial management and submission of proposed findings of fact and recommendations for

3

2017, the undersigned recommended that the District Court grant in part and deny in part PrimeCare's Motion to Dismiss (Document No. 19). Specifically, the undersigned recommended that PrimeCare's Motion be "(1) granted as to Plaintiff's claim concerning PrimeCare's failure to properly diagnoses the full extent of Plaintiff's injuries to his left eye, ribs, shoulder, leg, and neck, and (2) denied as to Plaintiff's claim concerning PrimeCare's failure to diagnose and provide treatment for Plaintiff's restrictive lung disease." (Id.) Plaintiff filed his Objections on December 15, 2017, and PrimeCare filed its Objections on December 19, 2017. (Document Nos. 29 and 32.) By Memorandum Opinion and Order entered on March 22, 2018, United States District Judge Robert C. Chambers adopted the undersigned Proposed Findings and Recommendation and granted in part and denied in part Defendant's Motion to Dismiss (Document No. 19). (Document No. 33.)

On April 12, 2018, the undersigned entered a Scheduling Order setting forth deadlines for the completion of discovery and the filing of any dispositive motions as to Plaintiff's restrictive lung disease claim. (Document No. 34.) On July 24, 2018, Plaintiff filed a Motion to Amend his Complaint. (Document No. 42.) In support, Plaintiff stated that he wished to amend his Complaint to name additional individuals as defendants: Maria Porter, Kathy Weekly, and Jarrod Stewart. (Id.) Plaintiff explained that the identities of these individuals were previously unknown. (Id.) By Order entered on August 3, 2018, the undersigned granted Plaintiff's Motion to Amend.[4]

_____

disposition. (Document No. 16.)

[4] The undersigned noted that in his prior Response to Defendant's Motion to Dismiss, Plaintiff stated that he was unable to name certain Prime Care employees as defendants because they concealed their identities by failing to wear name tags. The undersigned noted that Plaintiff could amend his Complaint to name "John Doe" or "Jane Does" as defendants where the "true identity of an unnamed party can be discovered through discovery or through intervention by the Court."

(Document No. 44.) Plaintiff was directed to file his Amended Complaint by August 17, 2018. (Id.)

Plaintiff filed his Amended Complaint on August 17, 2018. (Document No. 46.) In his Amended Complaint, Plaintiff named Maria Porter, Kathy Weekly, and Jarrod Steward as additional defendants. (Id.) Plaintiff further indicated that his Amended Complaint had been served upon the law office of Offutt, Nord, Ashworth, c/o Anne Liles O'Hare. (Id.) By Notice filed on August 23, 2018, Attorney O'Hare notified Plaintiff that she was not authorized to accept service of the Amended Complaint on the behalf of Defendants Kathy Weekly, Maria Porter, or Jarrod Steward. (Document No. 48.) Attorney O'Hare, however, provided Plaintiff and the Court with the last known addresses for Jarrod Steward and Kathy Weekly. (Id.) Attorney O'Hare further stated that PrimeCare has "never employed a person by the name of Maria Porter at the Western Regional Jail, but in the event the person [Plaintiff] meant to name is Berea Porter," such an address was provided to Plaintiff and the Court. (Id.) By Order entered on August 24, 2018, the undersigned directed Plaintiff to notify the Court within 10 days as to whether he intended to name Berea Porter, instead of Maria Porter, as a defendant in his Amended Complaint. (Document No. 49.) The Court further directed the Clerk to issue process by preparing and serving a Summons and a copy of Plaintiff's Amended Complaint upon Jarrod Stewart and Kathy Weekly. (Id.) By letter filed on August 30, 2018, Plaintiff notified the Court that he "did intend for the Defendant's name to be Berea Porter and not Maria Porter." (Document No. 53.) By Order entered on August 31, 2018, the undersigned directed that Berea Porter be substituted for Maria Porter and that the Clerk issue process by preparing and serving a

5

Summons and a copy of Plaintiff's Amended Complaint upon Berea Porter. (Document No. 54.)

On September 11, 2018, PrimeCare filed is Motion for Summary Judgment and Memorandum in Support. (Document Nos. 58 and 59.) As Exhibits, PrimeCare attaches the following: (1) The Affidavit of Sandra M. Ulerick (Document No. 58-1); and (2) A copy of Plaintiff's pertinent medical records (Document No. 58-2). Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on September 12, 2018, advising him of the right to file a response to PrimeCare's Motion for Summary Judgment. (Document No. 60.) Plaintiff filed his Response in Opposition on November 16, 2018. (Document No. 75.) As Exhibits, Plaintiff attaches the following: (1) A copy of his pertinent medical records from August 17, 2012, until October 23, 2012 (Document Nos. 75-1 and 75-5.); (2) A copy of Plaintiff's "Transfer History" from August 2, 2012, until January 28, 2015 (Document No. 75-2.); (3) A copy of Plaintiff's radiology report dated March 24, 2015, May 27, 2015, and August 5, 2015, and December 13, 2012 (Document No. 75-3.); (4) A copy of "Findings of Fact and Conclusions of Law" as to Plaintiff's disability claim (Document No. 75-4.); and (5) A copy of the "West Virginia Regional Jail & Correctional Facility Authority Inmate Medical Co-Payments Authorization Form" concerning Plaintiff's request for referral to a doctor dated October 29, 2012, and November 5, 2012 (Document No. 75-6.).

## **THE STANDARD**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of

6

facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Although the Court will view all underlying facts and inference in a light most favorable to the nonmoving party, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. Anderson, 477 U.S. at 252, 106 S.Ct. at 2505. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Id., 447 U.S. at 247-48, 106 S.Ct. at 2505. If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## ANALYSIS

Construing Plaintiff's Complaint liberally, the undersigned finds that Plaintiff is asserting an Eighth Amendment claim of deliberate indifference to his medical needs and a state law claim of medical malpractice. In his Amended Complaint, Plaintiff included a claim against PrimeCare for negligent hiring, training, and monitoring of its employees.

In its Motion, PrimeCare argues that Plaintiff was not diagnosed with restrictive lung

7

disease until December 11, 2014, approximately two years after Plaintiff was transferred from a PrimeCare facility. (Document No. 59, p. 8.) PrimeCare states that "Dr. Walker does not opine when the restrictive lung disease developed, and in fact, states that his findings cannot necessarily be attributed to [Plaintiff's] October 17, 2012 injuries sustained at the Western Regional Jail." (Id.) PrimeCare argues that Plaintiff cannot show that he had restrictive lung disease while he was under PrimeCare's care. (Id.) Accordingly, PrimeCare contends there is no genuine issue of material fact and this case must be dismissed as a matter of law. (Id.)

In Response, Plaintiff argues that whether PrimeCare "had knowledge such that it had a duty to diagnose and treat Plaintiff for restrictive lung disease is a question of fact, pertinent to jury decisions." (Document No. 75, p. 3.) Plaintiff claims that "even if Plaintiff did not discover the injury until 2016, does not absolve Defendant of the responsibility it had while he was under the provider's care in 2012." (Id.) Plaintiff further claims that PrimeCare failed to provide the "receiving facility" with documentation of his October 17, 2012 "bodily damage." (Id., p. 4.) Plaintiff complains that he was "transferred back and forth numerous times within his injured period from October 17, 2012, till his transfer to MOCC 12/14/2012." (Id., p. 5.) Plaintiff claims that his restrictive lung disease was the result of the injuries he suffered on October 17, 2012. (Id., p. 6.) Plaintiff alleges that "there is no record of Plaintiff having any rib fractures or breaks before the 10/17/2012 incident." (Id.) Plaintiff alleges that his appointment with the pulmonologist was made on September 11, 2012, prior to his October 17, 2012 injury, and "had nothing to do with the incident in question." (Id., pp. 7 – 8.) Plaintiff argues that PrimeCare continuously failed to provide appropriate treatment for his injuries and rejected his request for treatment by an outside physician. (Id., p. 8.)

8

1.    **Eighth Amendment:**

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'")(quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic

9

human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. Id.; also see Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 *1st Cir. 1990)("A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."); Morales Feliciano v. Calderson Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004)("A constitutional violation is . . . established when government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medication attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort, or a threat to good health.") The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * *

10

Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

Miltier v. Born, 896 F.2d 848, 851 - 52 (4th Cir. 1990)(*recognized in* Sharpe v. South Carolina Dept. of Corr., 621 Fed.Appx. 732, 733 (4th Cir. 2015) *as overruled in part on other grounds by* Farmer, 511 U.S. at 837, 114 S.Ct. 1970); See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each individual defendant's consciousness of the risk of harm to him. See Farmer, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each individual Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Farmer, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each individual Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

PrimeCare is a contracted medical provider of the West Virginia Regional Jail and Correctional Facility Authority, which provides health care services to inmates in West Virginia's regional jails. West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1998)(A private entity that contracts with the State to provide medical services acts "under color of state law."); also see Monell v. Dep't of Soc. Services, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)(A corporation acting under color of State law can be held liable under Section 1983 only for unconstitutional policies and practices.); Motto v. Correctional Medical Services, 2007 WL 2897854 (S.D.W.Va. Sept. 27, 2007). Since PrimeCare is a contracted medical provider for a state agency, the deliberate indifference standard is applicable to the conduct of PrimeCare and its employees. Mullins v. Prime Care Medical, Inc., 2014 WL 1260378, * 9 (S.D.W.Va. March 27, 2014)(J. Johnston); also see Edwards v. State, 2002 WL 34364404, * 12 (S.D.W.Va. March 29, 2002)(J. Goodwin)("To state a case against PrimeCare, [plaintiff] must show that a policy or custom or ratification of a policy or custom and procedure by PrimeCare caused a constitutional violation."); Kinder v. PrimeCare Medical, Inc., 2015 WL 1276748, *9 (S.D.W.Va. March 19, 2015). "[A] private corporation is liable under § 1983 *only* when the official policy or custom of the corporation causes the alleged deprivation of federal rights." Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999)(emphasis in original). A private corporation, however, cannot be held liable under the doctrine of *respondeat superior* for the individual actions of its employees. Id. at 727; see also Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006). To succeed, Plaintiff must show that the official charged acted personally in the deprivation of

plaintiff's rights.

Liberally construing Plaintiff's Complaint and Amended Complaint, Plaintiff appears to allege that PrimeCare had a policy or custom of failing to provide medical care despite knowledge that such treatment was necessary. Plaintiff explains that PrimeCare was notified of his restrictive lung disease by Dr. Walker, but made no efforts to treat the condition. In its Motion, however, PrimeCare argues that there is no evidence that Plaintiff had or developed restrictive lung disease while Plaintiff was under the care of PrimeCare. In his Complaint and Amended Complaint, Plaintiff claims that he developed restrictive lung disease due to PrimeCare's failure to property treat the injuries he received to his ribs on October 17, 2012. In support, Plaintiff attaches Dr. Walker's report dated June 17, 2016. (Document Nos. 2-2 and 23, pp. 8 - 11.) Specifically, Dr. Walker opined as follows:

> Mr. Carter was involved in a motor vehicle accident in 2007, sustaining a traumatic brain injury, neck injuries resulting in tracheal stenosis, a seizure disorder, and injuries involving the right ankle, left shoulder, and recurrent sprain/strains of the cervical, thoracic, and lumbar regions of the spine.
>
> On or about October 17, 2012, Mr. Carter suffered injuries while an inmate at Western Regional Jail. X-ray studies documented an acutely fractured 8th rib. Review of clinical notes and x-ray reports provided lead me to conclude, with a reasonable degree of medical certainty, that Mr. Carter sustained significant injuries on or about 10/17/2012, sufficient to result in an acutely fractured left 8th rib. Subsequent imagining studies have shown evidence of multiple, non-acute right and left sided rib fractures, an older fracture of the left clavicle, and non-acute (old) wedging of a lower thoracic vertebra. All of these subsequent findings are consistent with severe trauma to the chest wall but cannot necessarily be attributed to the injury of approximately 10/17/2012. Multiple and bilateral rib injuries often result in restrictive lung disease, or the inability to fully expand the chest wall, because of scarring at multiple levels. This restrictive lung disease can seriously amplify other lung disease, since usual compensation is by breathing deeper and faster. Restrictive lung disease is confirmed in Mr. Carter by pulmonary function testing completed on 12/11/2014. Mr. Carter's pre-existing tracheal stenosis would certainly make him more susceptible to additional damage from trauma to the area but cannot be considered with the information provided.

(Id.) Plaintiff alleges that despite PrimeCare's awareness of his restrictive lung disease, PrimeCare continuously refused to provide treatment. (Document No. 2, pp. 4 – 7.) PrimeCare, however, attaches the Affidavit of Sandra M. Ulerick, the Director of Risk Management and Privacy Officer for PrimeCare. (Document No. 58-1.) Ms. Ulerick states that in her position, she serves "as the records custodian for all inmates for which PrimeCare Medical provides medical services at the Regional Jails in West Virginia." (Id.) Ms. Ulerick states that she has reviewed Plaintiff's medical records and "determined that [Plaintiff] has not received medical treatment from PrimeCare Medical, Inc. since December 2012, when he was transferred from the West Virginia Regional Jail to Mount Olive Correction Complex in Fayette County, West Virginia, a facility which PrimeCare Medical does not provide medical services." (Id.) The record is void of any evidence to support Plaintiff's conclusory assertion that he suffered from restrictive lung disease while he was under the care of PrimeCare. A plaintiff must offer more than bare allegations or conclusory statements to survive a motion for summary judgment. See Greensboro Professional Fire Fighters Ass'n v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995)(finding that conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment); Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995)("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."); also see Silling v. Erwin, 881 F.Supp. 236, 237 (S.D.W.Va. 1995). The record reveals that Plaintiff's restrictive lung disease was confirmed by pulmonary function testing completed on December 11, 2014, which was approximately two years after Plaintiff was transferred to an institution where PrimeCare does ***not*** provided medical services. While under the care of PrimeCare, the record reveals that Plaintiff received breathing treatments for his asthma, referrals to an Ear, Nose, and Throat Specialist and pulmonologist concerning his

14

tracheal stenosis, x-rays following the assault by correctional officers, and instructions to do slow even deep breathing exercises. (Document No. 58-2.) The record, therefore, is void of any indication that PrimeCare had a policy or custom of failing to provide medical care despite knowing that treatment was necessary. Based upon the foregoing, the undersigned respectfully recommends that PrimeCare's Motion be granted as to Plaintiff's Eighth Amendment claim.

## 2.    Negligence Claims:

For a medical negligence claim, a plaintiff must established the following: (1) "The health care provider failed to exercise the degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances;" and (2) "Such failure was a proximate cause of the injury or death." W.Va. Code § 55-7B-3. Concerning a negligent hiring claim, the West Virginia Supreme Court of Appeals applies the following test:

> [W]hen the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

McCormick v. W. Virginia Dept. of Pub. Safety, 202 W.Va. 189, 1983, 503 S.E.2d 502, 506 (1998); also see Webb v. Raleigh Co. Sheriff's Dept., 761 F.Supp.2d 378, 397 (S.D.W.Va. 2010)(J. Berger). Under West Virginia law, a claim of negligent training and supervision is governed by negligence principles. See Runyon v. Hannah, 2013 WL 2151235, * 7 (S.D.W.Va. May 16, 2013)(J. Copenhaver)(citation omitted).

As explained above, there is no indication that Plaintiff had, or developed, restrictive lung disease while under the care of PrimeCare. Although Plaintiff claims that his restrictive lung

disease developed as a result of PrimeCare's improper treatment of injuries he received on October 17, 2012, the record is void of any evidence supporting such a conclusory allegation. Dr. Walker indicates that pulmonary function testing conducted on December 11, 2014, revealed that Plaintiff had restrictive lung disease. Dr. Walker explained that "[m]ultiple and bilateral rib injuries often result in restrictive lung disease, or the inability to fully expand the chest wall, because of scarring at multiple levels." The record, however, reveals that an x-ray conducted following the assault on October 17, 2012, revealed that Plaintiff suffered only a fracture to one rib (the 8th rib). Although Dr. Walker stated that subsequent imagining studies showed evidence of multiple, non-acute right and left sided rib fractures which are consistent with severe trauma, Dr. Walker stated that such "cannot necessarily be attributed to the injury of approximately 10/17/2012." Rather, Plaintiff submits a radiology report revealing "acute nondisplaced fractures of the 9th and 10th left ribs" dated March 24, 2015.[5] (Document No. 75-3, p. 1.) Furthermore, the record clearly reveals that Plaintiff was only under the medical care of PrimeCare for approximately two months following the October 17, 2012 assault, and PrimeCare ceased providing treatment to Plaintiff when he was transferred to MOCC in December 2012. The record is void of any evidence that Plaintiff had, or developed, restrictive lung disease as a result of PrimeCare's failure to properly treat his injuries from October 17, 2012, through December 2012. Thus, Plaintiff fails to establish that PrimeCare had a duty and breached such a duty

---

[5] Plaintiff further provided a copy of a radiology report dated May 27, 2015, which revealed the following (Document No. 75-3, p. 2.):

> There are numerous bilateral old rib fractures. This includes the right fifth through ninth ribs, with left second, third, and fifth through ninth ribs. These all appear old with no definite acute fracture evident. No effusion or pneumothorax. Old left clavicular fracture also present. When compared to a chest x-ray of 11/25/14, the multiple old factures were not as well seen since it was not a rib examination. May of the old fractures were present.

concerning treatment of Plaintiff's restrictive lung disease. Accordingly, Plaintiff cannot establish that medical negligence by PrimeCare resulted in his restrictive lung disease. Furthermore, Plaintiff fails to plead a single, non-conclusory fact concerning PrimeCare's process of hiring, training, or supervision. Plaintiff's negligent claims against PrimeCare amount to nothing more than threadbare recitals of the cause of action's elements, supported by mere conclusory statements. Based upon the foregoing, the undersigned respectfully recommends that PrimeCare's Motion for Summary Judgment (Document No. 58) be granted.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** PrimeCare's Motion for Summary Judgment (Document No. 58), and refer the matter back to the undersigned for further proceedings as to Plaintiff's claims against Defendants Porter, Weekly, and Stewart.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: May 20, 2019.

Omar J. Aboulhosn
United States Magistrate Judge