# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

| | |
|---|---|
| **KENNETH EUGENE CARTER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action Nos. 3:17-01337 |
| v. | ) |
| | ) |
| **PRIMECARE MEDICAL,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants Weekly, Stewart, and Porter's Motion for Summary Judgment (Document No. 97), filed on May 22, 2019. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 99.) Plaintiff filed his Response in Opposition on June 25, 2019. (Document No. 104.) Defendants filed their Reply on July 8, 2019. (Document No. 107.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion for Summary Judgment should be granted.

### FACTUAL BACKGROUND

On February 21, 2017, Plaintiff, acting *pro se*, filed his Complaint claiming entitlement to relief under 42 U.S.C. §1983.[1] (Document No. 2.) Plaintiff named the "PrimeCare Medical and its staff capacity" as the Defendant. (Id., p. 1.) Plaintiff explains that he suffered injuries as a

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

result of the use of excessive force by correctional officers on October 17, 2012.[2] (Id.) Plaintiff complains that PrimeCare failed to provide adequate and appropriate medical care for his injuries. (Id.) Plaintiff alleges that medical staff, Jarrod Stewart, misdiagnosed the extent of his injuries. (Id.) As a result of the misdiagnosis and the lack of treatment, Plaintiff alleges that he has suffered a "span of physical damage to one's functions and prolonged duration of agonizing pain with no relieve or no intention of ever correcting injured areas." (Id.) Plaintiff states that Dr. Robert Walker of Mountain State Occupational Medicine reviewed Plaintiff's medical records "as a Certified Independent Examiner" and opined that Plaintiff "sustained injuries on 10-17-2012 sufficient to result in an acutely fractured 8th rib, multiple and bilateral rib injuries often result in restrictive lung disease, or the inability to fully expand the chest wall because of scarring at multiple levels and further maintains that the pre-existing tracheal stenosis would certainly be more susceptible to additional damage from the endured trauma sustained." (Id.) Plaintiff further notes that Dr. Walker determined that Plaintiff suffered injuries to his left eye, several ribs, shoulder, leg, and "neck to lower back." (Id.) Plaintiff claims that even after Dr. Walker rendered the above opinion, PrimeCare failed to take any action "to correct," "seek a cure," or "alleviate the pain" for Plaintiff's conditions. (Id.) As relief, Plaintiff requests that PrimeCare be held "accountable for the mishandling that lead to physical harm, damage, loss of strength, effectiveness, left eye, and prolonged suffering, forcibly fractured bones, broken ribs with no medical treatment and failure to properly treat, negligence resulting in prolong agony of hurt and discomfort such as uncalled for pain." (Id.) As Exhibits, Plaintiff attaches a copy of pertinent medical records. (Document Nos. 2-1 and 2-2.)

---

[2] Plaintiff acknowledges that he filed suit in 2014 against correctional officers seeking relief for injuries he suffered as a result of the use of excessive force (Civil Action No. 3:14-cv-25636).

On April 11, 2017, Plaintiff paid the filing fee. (Document No. 9.) By Order entered on April 12, 2017, United States Magistrate Judge Cheryl A. Eifert directed the Clerk to issue a summons for the defendant and the United States Marshals Service to serve the defendant with the summons and complaint pursuant to Rule 4 of the Federal Rules of Civil Procedure.[3] (Document No. 12.)

On July 31, 2017, PrimeCare filed its Motion to Dismiss and Memorandum in Support. (Document Nos. 19 and 20.) PrimeCare argued that Plaintiff's Complaint should be dismissed based on the following: (1) "Plaintiff's claim should be dismissed pursuant to Rule 12(b)(6)" (Document No. 20, pp. 2 – 3.); (2) "Plaintiff's claims must be dismissed because the applicable statute of limitations has expired" (Id., pp. 3 – 4.); and (3) "To the extent the Plaintiff's Amended Complaint is based upon a violation of his constitutional rights, PrimeCare Medical, Inc. is not a 'person' subject to suit under 42 U.S.C. § 1983" (Id., pp. 4 – 5.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on August 1, 2017, advising him of the right to file a response to the PrimeCare's Motion to Dismiss. (Document No. 21.) On September 5, 2017, Plaintiff filed his Response in Opposition. (Document No. 23.) As Exhibits, Plaintiff attached the following: (1) A copy of his Affidavit (Id., p. 6.); and (2) A copy of a report from Dr. Robert B. Walker, a Certified Independent Examiner (Id., pp. 8 – 11.). On September 8, 2017, PrimeCare filed its Reply. (Document No. 25.) By Proposed Findings and Recommendation entered on November 28, 2017, the undersigned recommended that the District Court grant in part and deny in part

---

[3] Due to a conflict, the above case was referred to the undersigned on July 20, 2017, for total pretrial management and submission of proposed findings of fact and recommendations for disposition. (Document No. 16.)

PrimeCare's Motion to Dismiss (Document No. 19). Specifically, the undersigned recommended that PrimeCare's Motion be "(1) granted as to Plaintiff's claim concerning PrimeCare's failure to properly diagnoses the full extent of Plaintiff's injuries to his left eye, ribs, shoulder, leg, and neck, and (2) denied as to Plaintiff's claim concerning PrimeCare's failure to diagnose and provide treatment for Plaintiff's restrictive lung disease." (Id.) Plaintiff filed his Objections on December 15, 2017, and PrimeCare filed its Objections on December 19, 2017. (Document Nos. 29 and 32.) By Memorandum Opinion and Order entered on March 22, 2018, United States District Judge Robert C. Chambers adopted the undersigned Proposed Findings and Recommendation and granted in part and denied in part Defendant's Motion to Dismiss (Document No. 19). (Document No. 33.)

On April 12, 2018, the undersigned entered a Scheduling Order setting forth deadlines for the completion of discovery and the filing of any dispositive motions as to Plaintiff's restrictive lung disease claim. (Document No. 34.) On July 24, 2018, Plaintiff filed a Motion to Amend his Complaint. (Document No. 42.) In support, Plaintiff stated that he wished to amend his Complaint to name additional individuals as defendants: Maria Porter, Kathy Weekly, and Jarrod Stewart. (Id.) Plaintiff explained that the identities of these individuals were previously unknown. (Id.) By Order entered on August 3, 2018, the undersigned granted Plaintiff's Motion to Amend.[4] (Document No. 44.) Plaintiff was directed to file his Amended Complaint by August 17, 2018. (Id.)

---

[4] The undersigned noted that in his prior Response to Defendant's Motion to Dismiss, Plaintiff stated that he was unable to name certain PrimeCare employees as defendants because they concealed their identities by failing to wear name tags. The undersigned noted that Plaintiff could amend his Complaint to name "John Doe" or "Jane Does" as defendants where the "true identity of an unnamed party can be discovered through discovery or through intervention by the Court."

Plaintiff filed his Amended Complaint on August 17, 2018. (Document No. 46.) In his Amended Complaint, Plaintiff named Maria Porter, Kathy Weekly, and Jarrod Steward as additional defendants. (Id.) Plaintiff further indicated that his Amended Complaint had been served upon the law office of Offutt, Nord, Ashworth, c/o Anne Liles O'Hare. (Id.) By Notice filed on August 23, 2018, Attorney O'Hare notified Plaintiff that she was not authorized to accept service of the Amended Complaint on the behalf of Defendants Kathy Weekly, Maria Porter, or Jarrod Steward. (Document No. 48.) Attorney O'Hare, however, provided Plaintiff and the Court with the last known addresses for Jarrod Steward and Kathy Weekly. (Id.) Attorney O'Hare further stated that PrimeCare has "never employed a person by the name of Maria Porter at the Western Regional Jail, but in the event the person [Plaintiff] meant to name is Berea Porter," such an address was provided to Plaintiff and the Court. (Id.) By Order entered on August 24, 2018, the undersigned directed Plaintiff to notify the Court within 10 days as to whether he intended to name Berea Porter, instead of Maria Porter, as a defendant in his Amended Complaint. (Document No. 49.) The Court further directed the Clerk to issue process by preparing and serving a Summons and a copy of Plaintiff's Amended Complaint upon Jarrod Stewart and Kathy Weekly. (Id.) By letter filed on August 30, 2018, Plaintiff notified the Court that he "did intend for the Defendant's name to be Berea Porter and not Maria Porter." (Document No. 53.) By Order entered on August 31, 2018, the undersigned directed that Berea Porter be substituted for Maria Porter and that the Clerk issue process by preparing and serving a Summons and a copy of Plaintiff's Amended Complaint upon Berea Porter. (Document No. 54.)

On September 11, 2018, PrimeCare filed is Motion for Summary Judgment and Memorandum in Support. (Document Nos. 58 and 59.) As Exhibits, PrimeCare attached the

following: (1) The Affidavit of Sandra M. Ulerick (Document No. 58-1); and (2) A copy of Plaintiff's pertinent medical records (Document No. 58-2). Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on September 12, 2018, advising him of the right to file a response to PrimeCare's Motion for Summary Judgment. (Document No. 60.) Plaintiff filed his Response in Opposition on November 16, 2018. (Document No. 75.) As Exhibits, Plaintiff attached the following: (1) A copy of his pertinent medical records from August 17, 2012, until October 23, 2012 (Document Nos. 75-1 and 75-5.); (2) A copy of Plaintiff's "Transfer History" from August 2, 2012, until January 28, 2015 (Document No. 75-2.); (3) A copy of Plaintiff's radiology report dated March 24, 2015, May 27, 2015, and August 5, 2015, and December 13, 2012 (Document No. 75-3.); (4) A copy of "Findings of Fact and Conclusions of Law" as to Plaintiff's disability claim (Document No. 75-4.); and (5) A copy of the "West Virginia Regional Jail & Correctional Facility Authority Inmate Medical Co-Payments Authorization Form" concerning Plaintiff's request for referral to a doctor dated October 29, 2012, and November 5, 2012 (Document No. 75-6.). By Proposed Findings and Recommendation filed on May 20, 2019, the undersigned recommended that PrimeCare's Motion for Summary Judgment (Document No. 58) be granted and the matter be referred back to the undersigned for further proceedings on Plaintiff's claims against Defendants Porter, Stewart, and Weekly. (Document No. 96.)

On May 22, 2019, Defendants Porter, Stewart, and Weekly filed their Motion for Summary Judgement and Memorandum in Support. (Document Nos. 97 – 98.) As Exhibits, Defendants Porter, Stewart, and Weekly attach the following: (1) The Affidavit of Sandra M. Ulerick (Document No. 97-1.); and (2) A copy of Plaintiff's pertinent medical records

(Document No. 97-2). Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 23, 2019, advising him of the right to file a response to Defendants Porter, Stewart, and Weekly's Motion for Summary Judgment. (Document No. 99.) Plaintiff filed his Response in Opposition on June 25, 2019. (Document No. 104, pp. 1 - 7.) As Exhibits, Plaintiff attached the following: (1) A copy of Plaintiff's Affidavit (Id., p. 8.); (2) A copy of an article from the Mayo Clinic regarding "broken ribs" (Id., pp. 9 – 11.); (3) A copy of an article from Applied Radiology entitled "Reducing error in portable chest radiography" (Id., p. 12 – 17.); (4) A copy of an article from ScienceDirect entitled "Pitfalls in the diagnosis of blunt diaphragmatic injury" (Id., pp. 18 – 19.); (5) A copy of an article from RadioGraphics entitled "Traumatic Rib Injury: Patterns, Imaging Pitfalls, Complications, and Treatment" (Id., pp. 20 – 22.); (6) A copy of an article from a medical journal regarding the diagnosis of rib fractures (Id., p. 23.); (7) A copy of Plaintiff's pertinent medical records (Id., pp. 24 – 28.); and (8) A copy of contact information and online reviews for Dr. Ronald Alan Mudry (Id., pp. 29 – 30.) On July 8, 2019, Defendants Porter, Stewart, and Weekly filed their Reply. (Document No. 107.)

On July 9, 2019, following the granting of an extension of time, Plaintiff filed his Objections to the undersigned's Proposed Findings and Recommendation concerning PrimeCare's Motion for Summary Judgment. (Document No. 108.) By Memorandum Opinion and Order entered on July 30, 2019, Judge Chambers overruled Plaintiff's Objections, adopted the undersigned's recommendation, granted PrimeCare's Motion for Summary Judgment, and referred the matter back to the undersigned for further proceedings concerning the remaining Defendants. (Document No. 109.)

## THE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Although the Court will view all underlying facts and inference in a light most favorable to the nonmoving party, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. Anderson, 477 U.S. at 252, 106 S.Ct. at 2505. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Id., 447 U.S. at 247-48, 106 S.Ct. at 2505. If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## ANALYSIS

Construing Plaintiff's Complaint liberally, the undersigned finds that Plaintiff is asserting an Eighth Amendment claim of deliberate indifference to his medical needs and a state law claim of medical malpractice. In his Amended Complaint, Plaintiff names Defendants Porter, Stewart, and Weekly (employees of PrimeCare) as additional Defendants.

In their Motion, Defendants Porter, Stewart, and Weekly ["Defendants"] argue that Plaintiff was not diagnosed with restrictive lung disease until December 11, 2014, approximately two years after Plaintiff was transferred from a PrimeCare facility. (Document No. 98, p. 8.) Defendants state that "Dr. Walker does not opine when the restrictive lung disease developed, and in fact, states that his findings cannot necessarily be attributed to [Plaintiff's] October 17, 2012 injuries sustained at the Western Regional Jail." (Id.) Defendants argue that Plaintiff cannot show that he had restrictive lung disease while he was under PrimeCare's care. (Id.) Defendants note that Plaintiff "can only show by expert opinion he had the disease two years later." (Id.) Defendants, however, argue that the "record is completely void of any evidence to support Plaintiff's conclusory assertion that he suffered from restrictive [lung] disease while under the care of the Defendants." (Id.) Accordingly, Defendants contend there is no genuine issue of material fact and this case must be dismissed as a matter of law. (Id.)

In Response, Plaintiff argues that whether Defendants "had knowledge such restrictive lung disease is a question of fact, as for the sources of error." (Document No. 104, pp. 3 - 4.) Plaintiff complains that although the October 25, 2012, x-ray revealed Plaintiff suffered from a broken rib (8th rib), Defendants "never made any attempt to service aid, correct, or cure given it compromised a pre-existing condition of COPD." (Id., p. 2.) Plaintiff further asserts that

9

"Defendants neglected to diagnose [Plaintiff's] breathing hardships." (Id.) Plaintiff again contends that Defendants acted with deliberate indifference by determining that his one broken rib did not require evaluation by an "outside" hospital. (Id., pp. 4 – 5.) Next, Plaintiff states that "Defendants neglected to understand the portable x-ray sources of imaging pitfalls/errors and failed the medical step in error reduction." (Id., p. 2.) Citing online medical articles, Plaintiff contends there is a "strong probability" that the portable x-ray used in 2012 contributed to Defendants' "error" in failing to discover his restrictive lung disease. (Id., p. 4.) Plaintiff further concludes that "ribs are known to heal in about (6) six weeks of injury, if not displaced, which accounts for the multiple rib fractures later detected in all x-rays and the ascertainment in the 2015 CT scan." (Id., p. 4.) Plaintiff argues that even though his restrictive lung disease was not discovered until 2016, this "does not absolve Defendants of the responsibility it had while he was under the provider's care in 2012." (Id.) Finally, Plaintiff complains that Defendants acted with deliberate indifference and negligence by transferring Plaintiff to a different regional jail facility. (Id., pp. 2 – 3, 6.) Plaintiff claims that proper treatment for a broken rib is restricting activities and icing the area regularly - - "not being shackled around the waist of the injured area and chained to other inmates for hours on end [being] transferred in the back of a van bouncing down the road." (Id., p. 3.)

In Reply, Defendants argue Plaintiff's above Response "has set forth no specific facts showing that there is a genuine issue for trial." (Document No. 207.) Defendants note that Plaintiff raised a new argument about the inaccuracy of portable x-ray machines, but attaches only articles found on the internet to support his claim. (Id.) Defendants note that Plaintiff has only made unsupported allegations in support his claim. (Id.) Accordingly, Defendants contend

they are entitled to summary judgment. (Id.)

The undersigned notes that a review of Plaintiff's Response reveals that he is again attempting to reassert his claim that PrimeCare and its staff failed to properly diagnose and treat the full extent of the injuries Plaintiff suffered to his ribs on October 17, 2012. As explained above in the "Factual Background" section, this Court has already addressed and dismissed this claim. (See Document Nos. 26 and 33.) The sole issue before this Court is whether Defendants failed to diagnose and properly treat Plaintiff's restrictive lung disease. (Id.) Accordingly, the undersigned will address such below.

1. **Eighth Amendment:**

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'")(quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to

conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. Id.; also see Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 *1st Cir. 1990)("A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."); Morales Felicciano v. Calderson Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004)("A constitutional violation is . . . established when government officials show deliberate indifference to those medical needs

12

which have been diagnosed as mandating treatment, conditions which obviously require medication attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort, or a threat to good health.") The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

Miltier v. Born, 896 F.2d 848, 851 - 52 (4th Cir. 1990)(*recognized in* Sharpe v. South Carolina Dept. of Corr., 621 Fed.Appx. 732, 733 (4th Cir. 2015) *as overruled in part on other grounds by* Farmer, 511 U.S. at 837, 114 S.Ct. 1970); See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care

and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each individual defendant's consciousness of the risk of harm to him. See Farmer, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each individual Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each individual Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

Plaintiff alleges that Defendants Porter, Weekly, and Stewart acted with deliberate indifference in failing to diagnosis and provide adequate treatment for his restrictive lung disease. For purposes of an Eighth Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. Defendants do not appear to dispute that restrictive lung diseases is a serious medical condition. Accordingly, the undersigned will assume for purposes of the motion that Plaintiff's condition is serious enough to give rise to an Eighth Amendment claim.

Next, the undersigned will consider whether Defendants acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff contends Defendants acted with deliberate indifference in failing to provide medical care for his restrictive lung disease despite

knowledge that such treatment was necessary. Plaintiff explains that Defendants were notified of his restrictive lung disease by Dr. Walker, but made no efforts to treat the condition. In their Motion, however, Defendants note that there is no evidence that Plaintiff had or developed restrictive lung disease while Plaintiff was under the care of Defendants. In his Complaint and Amended Complaint, Plaintiff further claims that he developed restrictive lung disease due to Defendants' failure to property treat the injuries he received to his ribs on October 17, 2012. In support, Plaintiff attaches Dr. Walker's report dated June 17, 2016. (Document Nos. 2-2 and 23, pp. 8 - 11.) Specifically, Dr. Walker opined as follows:

> Mr. Carter was involved in a motor vehicle accident in 2007, sustaining a traumatic brain injury, neck injuries resulting in tracheal stenosis, a seizure disorder, and injuries involving the right ankle, left shoulder, and recurrent sprain/strains of the cervical, thoracic, and lumbar regions of the spine.
>
> On or about October 17, 2012, Mr. Carter suffered injuries while an inmate at Western Regional Jail. X-ray studies documented an acutely fractured 8th rib. Review of clinical notes and x-ray reports provided lead me to conclude, with a reasonable degree of medical certainty, that Mr. Carter sustained significant injuries on or about 10/17/2012, sufficient to result in an acutely fractured left 8th rib. Subsequent imagining studies have shown evidence of multiple, non-acute right and left sided rib fractures, an older fracture of the left clavicle, and non-acute (old) wedging of a lower thoracic vertebra. All of these subsequent findings are consistent with severe trauma to the chest wall but cannot necessarily be attributed to the injury of approximately 10/17/2012. Multiple and bilateral rib injuries often result in restrictive lung disease, or the inability to fully expand the chest wall, because of scarring at multiple levels. This restrictive lung disease can seriously amplify other lung disease, since usual compensation is by breathing deeper and faster. Restrictive lung disease is confirmed in Mr. Carter by pulmonary function testing completed on 12/11/2014. Mr. Carter's pre-existing tracheal stenosis would certainly make him more susceptible to additional damage from trauma to the area but cannot be considered with the information provided.

(Id.) Plaintiff, therefore, alleges that Defendants failed to diagnose and provide treatment of his restrictive lung disease.[6] The record, however, is void of any evidence to support Plaintiff's

---

[6] The undersigned again notes that Plaintiff alleges that after he suffered a broken rib on October 17, 2012, Defendants failed to provide appropriate treatment resulting in his develop of restrictive lung disease. Plaintiff claims that the use of a portable x-ray caused Defendants to

conclusory assertion that he suffered from restrictive lung disease while he was under the care of Defendants, who were PrimeCare employees. A plaintiff must offer more than bare allegations or conclusory statements to survive a motion for summary judgment. See Greensboro Professional Fire Fighters Ass'n v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995)(finding that conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment); Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995)("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."); also see Silling v. Erwin, 881 F.Supp. 236, 237 (S.D.W.Va. 1995). Defendants attach the Affidavit of Sandra M. Ulerick, the Director of Risk Management and Privacy Officer for PrimeCare. (Document No. 97-1.) Ms. Ulerick states that in her position, she serves "as the records custodian for all inmates for which PrimeCare Medical provides medical services at the Regional Jails in West Virginia." (Id.) Ms. Ulerick states that she has reviewed Plaintiff's medical records and "determined that [Plaintiff] has not received medical treatment from PrimeCare Medical, Inc. since December 2012, when he was transferred from the West Virginia Regional Jail to Mount Olive Correction Complex in Fayette County, West Virginia, a facility which PrimeCare Medical does not provide medical services." (Id.) The record reveals that Plaintiff's restrictive lung disease was confirmed by pulmonary function testing completed on December 11, 2014, which was approximately two years after Plaintiff was transferred to an institution where neither the individual Defendants nor PrimeCare provided medical services. Thus, Plaintiff was under the care of Defendants for less than two months following the incident

---

miss additional broken ribs. (Id.) Plaintiff further asserts that Defendants were aware that he had a trachea breathing problem and that the lack of treatment for his broken ribs would "place Plaintiff in a high position of damage to his life." (Document No. 46.) As explained above, Plaintiff's claim that PrimeCare and its staff failed to treat and properly diagnose the full extent of the injuries to Plaintiff's left eye, ribs, shoulder, leg and neck have been dismissed by this Court. (Document Nos. 26 and 33.)

where he suffered a broken rib. (Document No. 97-1 and Document No. 104, p. 27.) While under the care of Defendants and PrimeCare, the record reveals that Plaintiff received breathing treatments for his asthma, referrals to an Ear, Nose, and Throat Specialist and pulmonologist concerning his tracheal stenosis, x-rays following the assault by correctional officers, and instructions to do slow even deep breathing exercises. (Document No. 97-2.) Plaintiff's medical records further reveal that Plaintiff's oxygen saturation levels ranged between 94% and 98% from October 17, 2012, until his transfer to a different facility in December 2012. (Id.) The record, therefore, is void of any indication that Defendants knew Plaintiff was experiencing symptoms of restrictive lung disease and failed to provide appropriate treatment. (Id.) Based upon the foregoing, the undersigned respectfully recommends that Defendants' Motion be granted as to Plaintiff's Eighth Amendment claim.

**2.      Negligence Claims:**

For a medical negligence claim, a plaintiff must establish the following: (1) "The health care provider failed to exercise the degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances;" and (2) "Such failure was a proximate cause of the injury or death." W.Va. Code § 55-7B-3. Under West Virginia law, a claim of negligent training and supervision is governed by negligence principles. See Runyon v. Hannah, 2013 WL 2151235, * 7 (S.D.W.Va. May 16, 2013)(J. Copenhaver)(citation omitted).

As explained above, there is no indication that Plaintiff had, or developed, restrictive lung disease while under the care of Defendants. Although Plaintiff claims that his restrictive lung disease developed as a result of Defendants' improper treatment of injuries he received on October 17, 2012, the record is void of any evidence supporting such a conclusory allegation. Dr.

17

Walker indicates that pulmonary function testing conducted on December 11, 2014, revealed that Plaintiff had restrictive lung disease. Dr. Walker explained that "[m]ultiple and bilateral rib injuries often result in restrictive lung disease, or the inability to fully expand the chest wall, because of scarring at multiple levels." The record, however, reveals that an x-ray conducted following the assault on October 17, 2012, revealed that Plaintiff suffered only a fracture to one rib (the 8th rib). (Document No. 104, p. 27.) Although Dr. Walker stated that subsequent imagining studies showed evidence of multiple, non-acute right and left sided rib fractures which are consistent with severe trauma, Dr. Walker stated that such "cannot necessarily be attributed to the injury of approximately 10/17/2012." Rather, Plaintiff submits a radiology report revealing "acute nondisplaced fractures of the 9th and 10th left ribs" dated March 24, 2015.[7] (Document No. 104, p. 25.) Plaintiff further submits online medical articles discussing "pitfalls" of portable x-ray machines. (Id., pp. 12 – 23.) These online medical articles, however, fail to provide evidence specific to Plaintiff's case. Furthermore, as stated above, Plaintiff's claim that PrimeCare and its staff failed to properly diagnose the full extent of the injuries Plaintiff suffered to his ribs on October 17, 2012, has been dismissed as untimely by this Court. (Document Nos. 26 and 33.) Finally, the record clearly reveals that Plaintiff was only under the medical care of Defendants for approximately two months following the October 17, 2012 assault, and Defendants stopped providing treatment to Plaintiff when he was transferred to MOCC in December 2012. The record is void of any evidence that Plaintiff had, or developed, restrictive

---

[7] Plaintiff further provided a copy of a radiology report dated May 27, 2015, which revealed the following (Document No. 104, p. 26.):
> There are numerous bilateral old rib fractures. This includes the right fifth through ninth ribs, with left second, third, and fifth through ninth ribs. These all appear old with no definite acute fracture evident. No effusion or pneumothorax. Old left clavicular fracture also present. When compared to a chest x-ray of 11/25/14, the multiple old factures were not as well seen since it was not a rib examination. Many of the old fractures were present.

lung disease as a result of Defendants' failure to properly treat his injuries from October 17, 2012, through December 2012. Thus, Plaintiff fails to establish that Defendants had a duty and breached such a duty concerning treatment of Plaintiff's restrictive lung disease. Accordingly, Plaintiff cannot establish that medical negligence by Defendants resulted in his restrictive lung disease. Since Plaintiff cannot establish that he had restrictive lung disease during the time period he was treated by Defendants, Plaintiff's allegation of negligent training and supervision by Defendants Porter and Weekly also fails. Based upon the foregoing, the undersigned respectfully recommends that Defendants' Motion for Summary Judgment (Document No. 97) be granted.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants' Motion for Summary Judgment (Document No. 97), and dismiss this matter from the docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: October 7, 2019.

Omar J. Aboulhosn
United States Magistrate Judge